**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3408
_____

JUAN JESUS GONZALEZ-NICOLAS,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A216-370-983)
Immigration Judge:  Honorable David Koelsch
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
July 28, 2021

Before: JORDAN, MATEY and NYGAARD, Circuit Judges

(Opinion filed July 29, 2021)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Juan Jesus Gonzalez-Nicolas petitions for review of his final order of removal. We will dismiss the petition in part and deny it in remaining part.

I.

Gonzalez-Nicolas is a citizen of Mexico who entered the United States illegally. The Government charged him as removable on that basis and, through counsel, he conceded the charge. Gonzalez-Nicolas did not claim to fear any harm in Mexico. Instead, the only relief he sought was cancellation of removal under 8 U.S.C. § 1229b(b) on the ground that his U.S.-citizen daughter will suffer hardship if he is removed.

Gonzalez-Nicolas testified and offered evidence in support of his application at a hearing before an immigration judge ("IJ"). The IJ later issued a written decision denying Gonzalez-Nicolas's application on three independent grounds. First, the IJ concluded that Gonzalez-Nicolas had not shown that he has been a "person of good moral character" during his presence in the United States as required by § 1229b(b)(1)(B). Second, the IJ concluded that Gonzalez-Nicolas failed to show that his removal will result in "exceptional and extremely unusual hardship" to his daughter as required by § 1229b(b)(1)(D). Third, the IJ concluded that cancellation was not warranted in the exercise of discretion.

In support of the first and third of those conclusions, the IJ relied on (1) Gonzalez-Nicolas's conviction of a DUI during which (according to the charging instrument) his daughter was in the car, and (2) Gonzalez-Nicolas's recent and admitted assault of his daughter's mother, who had a restraining order against him at the time. The IJ also found Gonzalez-Nicolas's testimony about those two incidents not credible on the basis of

2

inconsistencies between his testimony and other evidence of record. Gonzalez-Nicolas appealed through counsel to the BIA, which adopted the IJ's decision and also explained why it rejected the arguments he raised on appeal.

Gonzalez-Nicolas now petitions for review. We have jurisdiction under 8 U.S.C. § 1252(a)(1) except as discussed herein.

## II.

As the Government argues, we lack jurisdiction to review the agency's discretionary determinations regarding cancellation of removal except to the extent that Gonzalez-Nicolas raises a colorable constitutional claim or question of law. See 8 U.S.C. § 1252(a)(2)(B)(i), (D); Hernandez-Morales v. Att'y Gen., 977 F.3d 247, 249 (3d Cir. 2020). Gonzalez-Nicolas raises one argument that qualifies, but it lacks merit.

Gonzalez-Nicolas argues that he was denied due process during his hearing before the IJ, which was conducted by video conference, because the audio connection made it difficult for his counsel and the IJ to hear him. This claim requires Gonzalez-Nicolas to show that (1) the audio problems prevented him from meaningfully presenting his case, and (2) he was prejudiced as a result. See Mirambeaux v. Att'y Gen., 977 F.3d 288, 292 (3d Cir. 2020); see also Vilchez v. Holder, 682 F.3d 1195, 1199-2100 (9th Cir. 2012) (addressing similar due process claim based on video conferencing issues); Rusu v. INS, 296 F.3d 316, 323-24 (4th Cir. 2002) (same). Gonzalez-Nicolas makes neither showing.

First, although Gonzalez-Nicolas argues that this technical issue made his hearing "difficult," he does not claim that the IJ failed to hear or understand any specific testimony or that this technical issue prevented him from offering any particular

3

testimony.  Nor does the hearing transcript otherwise suggest that this technical issue prevented Gonzalez-Nicolas from meaningfully presenting his case.

Near the beginning of the hearing, Gonzalez-Nicolas's counsel notified the IJ that "the echo, it's very difficult to hear," and the IJ said "I agree it is difficult."  (A.R. 284.) The IJ then noted that the echo was emanating from Gonzalez-Nicolas's connection at the detention center, and the court officer accompanying Gonzalez-Nicolas notified the IJ that audio by speaker phone "is the only option we have here."  (A.R. 285.)  The IJ advised counsel that "I wish we could do something about it, but unfortunately we can't. That's why it's really helpful to take a pause at the end of every sentence.  I know that's kind of unnatural."  (Id.)  The IJ then confirmed that he and the court officer could hear each other "just fine" over the audio connection and that Gonzalez-Nicolas could "speak up a little bit."  (A.R. at 286.)  The IJ also repeated his instruction that "if you could just again, you know, pause after you're done speaking."  (A.R. 287.)

The hearing then proceeded.  The transcript thereafter reveals numerous instances in which the interpreter requested clarification from Gonzalez-Nicolas, and numerous notations of "indiscernible," but Gonzalez-Nicolas's testimony was otherwise clear, cogent and responsive throughout.  Gonzalez-Nicolas's counsel also did not mention the echo again or otherwise claim to have any problems hearing him after the IJ advised the participants to pause after every sentence.  In sum, as one court explained in rejecting a similar claim, "[i]t does appear that the IJ and the participants in the hearing had some difficulty hearing each other at the beginning of the proceeding, but the record indicates

4

that they spoke up when that was the case and worked cooperatively and successfully to address the problem." Vilchez, 682 F.3d 1200.

Second, Gonzalez-Nicolas has not shown prejudice. We reach that conclusion for the reasons just discussed and for one additional reason. Gonzalez-Nicolas argued before the BIA that the echo prejudiced him because it contributed to the IJ's adverse credibility determination as to his good moral character, which in turn influenced the IJ's alternative denial of cancellation in the exercise of discretion. As explained above, however, the IJ also denied cancellation for the independently dispositive reason that Gonzalez-Nicolas did not show the requisite hardship to his daughter under § 1229b(b)(1)(D). Gonzalez-Nicolas has not argued that the audio problems influenced the IJ's ruling on that point, and it is apparent that it did not. After Gonzalez-Nicolas's hearing, the IJ kept the record open so that counsel could submit additional evidence on the issue of hardship. Counsel did so, and the IJ based his ruling on all the evidence provided. Thus, we see no indication that the audio problems may have influenced the outcome of this case.

This argument aside, Gonzalez-Nicolas contends that the IJ and BIA erred in their assessments of good moral character, hardship and the exercise of discretion. These factual arguments are the kind of "arguments such as that an Immigration Judge or the BIA incorrectly weighed evidence, failed to consider evidence or improperly weighed equitable factors [that] are not questions of law under § 1252(a)(2)(D)." Jarbough v. Att'y Gen., 483 F.3d 184, 189 (3d Cir. 2007). Thus, we lack jurisdiction to consider these arguments.

III.

5

For these reasons, we will dismiss the petition for review to the extent that we lack jurisdiction to consider Gonzalez-Nicolas's arguments and will otherwise deny it. The Government's motion to dismiss the petition for review is granted in part and denied in part to the same extent.